IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SHIPMAN AND ASSOCIATES, LLP, | ] |
| Plaintiff, | ] |
| | ] CASE NO.: CV-03-HS-265-S |
| v. | ] |
| BRENT L. CRUMPTON, et al., | ] |
| Defendant. | ] |

**ENTERED**
**SEP - 7 2004**

## Memorandum Opinion

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment (doc. 26). This is a civil action filed, on February 5, 2003, by the Plaintiff Shipman and Associates, LLP ("Shipman"), against the Defendants Brent L. Crumpton ("Crumpton") and Crumpton Edge, P.C. ("Crumpton Edge"), alleging Counts of Breach of Contract, Declaratory Judgment, Accounting, Claim for Money Advanced, Claim for Injunctive Relief, and Claim for Specific Performance.

### I. UNDISPUTED FACTS

Defendant Crumpton is, and was, at all times pertinent to this Complaint, a practicing lawyer in the State of Alabama. He was a member of Crumpton Edge. Prior to October 26, 2000, and subsequent thereto, Crumpton Edge was retained by a number of clients for representation of them in products liability and improper construction claims against various builders, manufacturers, distributors, applicators, and other potentially responsible parties because of the application of exterior insulation and finish systems ("EIFS") to their respective residences (the "EIFS claims"). Crumpton Edge agreed to represent these clients in consideration of what is generally known as a contingent fee arrangement, an arrangement whereby the said attorneys would be paid a portion of



any recovery obtained for the clients on their claims and in the event no recovery was realized for the clients, Crumpton Edge agreed to make no charge for professional services rendered.

On October 26, 2000, Shipman and Crumpton Edge entered into a letter agreement stating in pertinent part as follows:

> This is to propose and confirm the nature of the agreement between the firm of Crumpton & Edge and Shipman & Associates, LLP, in connection with the existing EIFS litigation that your firm is handling against builders, EIFS manufacturers, distributors, applicators and other potentially responsible parties. As used herein, the term "existing EIFS litigation" or existing EIFS cases shall mean all cases for which Crumpton & Edge has a fee contract or agreement with a client relating to problems associated with EIFS or any structure upon which EIFS might be contained, whether in litigation, or not. There will be a 50/50 split, between Crumpton & Edge and Shipman & Associates, LLP of any fees to which Crumpton & Edge might be entitled to recover as a result of any fee contract or agreement with a client. Any out of pocket expenses advanced by Crumpton & Edge and/or Shipman & Associates, LLP, will be reimbursed to the appropriate firm from any recovery, in accordance with the provisions of all applicable fee contracts or agreements. You agree that you will seek the consent of all existing EIFS clients to our association and advise all potential clients that we will be acting as co-counsel. Where necessary, you will assist us in obtaining pro hac vice admission to appear in any of these cases. Crumpton & Edge and Shipman & Associates, LLP will each provide its respective EIFS attorney work product, including access to all pleadings, depositions, discovery, documents, briefs, affidavits, experts, expert reports and other supporting documents/work product that each have gathered and /or produced over the last several years in connection with their EIFS litigation experience. In addition, Shipman & Associates, LLP will provide sufficient attorney, paralegal and staff support to assist with the work necessary to adequately represent the existing EIFS clients.

*October 26, 2000 Letter Agreement*, at 1. The last paragraph of that agreement states:

> I hope that you will find this arrangement satisfactory. As such, please sign a copy of this letter, on behalf of you and your firm, and return the same to me as soon as possible.

*Id.* at 2.

At some point, Crumpton and his partner in Crumpton & Edge, Arthur Edge, III, decided to

terminate their relationship and their company. Litigation ensued, and, on February 15, 2001, the two entered into a "Settlement Agreement and Mutual Release." The settlement agreement purported to resolve all pending issues between the parties and divide up clients and proceeds from the EIFS cases. Shipman was a party to this agreement only as to Article IV of same. Article IV of the agreement reads as follows:

### ARTICLE IV

With respect to all E.I.F.S. Litigation clients of the Corporation who choose to be represented by Crumpton, and subject to the last paragraph of this Article IV, Crumpton shall be entitled to seventy percent (70%) of any contingent attorney's fees received, and Edge shall be entitled to thirty percent (30%) of any contingent attorney's fees received. Crumpton shall not be entitled to make any claim for *quantum meruit*, for bringing any case to a conclusion, whether by settlement or trial. By its execution of this Settlement Agreement, Shipman & Associates, L.L.P. acknowledges and agrees that it shall not be entitled to any portion of contingent attorney's fees to which Edge is entitled.

With respect to all E.I.F.S. Litigation clients of the Corporation who choose to be represented by Edge, and subject to the last paragraph of this Article IV, Edge shall be entitled to seventy percent (70%) of any contingent attorney's fees received, and Crumpton shall be entitled to thirty percent (30%) of any contingent attorney's fees received. Edge shall not be entitled to make any claim against Crumpton for additional attorney's fees, including, but not limited to, any claim for *quantum meruit*, for bringing any case to a conclusion, whether by settlement or trial. Edge understands and agrees that, as to any case or matter to which this paragraph is applicable, Shipman & Associates, L.L.P. shall have no further responsibility for legal representation. Crumpton, Edge and, by its execution of this Settlement Agreement, Shipman & Associates, L.L.P. agree that, as to any case or matter to which this paragraph is applicable and which also is listed on Exhibit "E," to be furnished to counsel for Crumpton and Edge only simultaneously with the execution of this settlement agreement, Shipman & Associates, L.L.P. shall be entitled to compensation for paralegal time (at rates ranging from $65 to $85 per hour) and reasonable out-of-pocket expenses only, through February 9th, 2001, the total amount of which compensation and expenses shall not exceed 30% of the attorney's fees recovered by settlement or judgment. The number of cases contained on Exhibit "E" shall not exceed 123. A copy of Exhibit "E" with the paralegal charges affixed thereon shall be delivered in an envelope to Lee Zell, Crumpton's attorney, not later than three (3) business days after the effective date of this settlement agreement, but

3

shall not be opened by him until the third (3rd) business day after the effective date of this settlement agreement at which time a copy shall be transmitted to counsel for Edge to be affixed to his copy of the settlement agreement. Lee Zell shall also open a post office box in the name of Crumpton Edge, P.C., to which he and/or his staff shall have the only key. All clients to whom Exhibit "C" is mailed will also receive a postage prepaid envelope addressed to said post office box. Commencing on the third (3rd) day after the effective date of this settlement agreement and continuing from day to day thereafter so long as he deems it prudent and necessary, Lee Zell and/or his staff shall empty said post office box and simultaneously transmit to Edge and Crumpton copies of the Election of Counsel forms received in response to Exhibit "C."

Prior to the calculation of contingent attorney's fees as set forth herein, each respective party shall be furnished with a copy of the Settlement Agreement and each shall be reimbursed for all actual out-of-pocket expenses incurred, which include, but are not limited to, court filing fees, long distance charges, copying expenses, facsimile expenses, deposition expenses, travel expenses and special postage charges; provided, however, that payment of such expenses shall be made only if such expenses are supported by receipts or other appropriate documentation that such expenses have been incurred. Each party shall be entitled to review such receipts or other documentation. Any expense reimbursement due to the Corporation shall be divided equally between Crumpton and Edge.

Edge and Crumpton represent that, to the best of their knowledge, Exhibit "F" attached to this Agreement is a true, correct, and complete lists of cases as to which claims for attorney's fees or expenses have been or may be asserted by attorneys other than Crumpton, Edge, or Shipman & Associates, L.L.P., together with the amounts of each such claim.

Any disagreement or dispute by or between Edge and Shipman & Associates, L.L.P. arising out of or relating only to compensation for paralegal time and expenses, including the reasonableness thereof, shall be resolved by binding arbitration under the Commercial Dispute Resolution Procedures of the American Arbitration Association (Expedited Procedures), as amended and effective on January 1, 1999. In such event, one (1) arbitrator shall be selected from among Rodney Max, G.M. Van Tassel, Jr. and Richard F. Ogle by the respondent or party against whom such arbitration is brought, and such arbitration will be handled by the single arbitrator so selected.

The division of fees contemplated by this Article IV shall apply only to clients' selection of counsel in response to Exhibit "C" of this Agreement, and shall not apply in the event any such client thereafter terminates the representation of counsel selected in response to Exhibit "C" and subsequently elects to be represented

4

> by other counsel, including Edge or Crumpton. Nothing in this paragraph, however, shall operate or be construed as a limitation on the right of Edge or Crumpton to seek *quantum meruit* compensation from any client who terminates his services.

## II. SUMMARY JUDGMENT STANDARD OF REVIEW

> In conducting [a summary judgment analysis], [the Court must] view all evidence and factual inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56©. However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment. *Id.*

*Lofton v. Secretary of Dept. of Children and Family Services,* 358 F.3d 804, 809 (11th Cir. 2004).

## III. ANALYSIS

A.   **Liability of Crumpton Edge on Breach of Contract Claims**

   1.   **Contractual Obligations and Prior Orders**

      a.   **The October 26, 2000 Letter Agreement**

The first line of the letter states that "[t]his is to propose and confirm the nature of the agreement between the firm of Crumpton & Edge and Shipman & Associates, LLP." Accordingly, at first glance, at least these two entities were parties to the agreement. Under the agreement, Shipman was to provide

> its respective EIFS attorney work product, including access to all pleadings, depositions, discovery, documents, briefs, affidavits, experts, expert reports and other supporting documents/work product that each have gathered and /or produced over the last several years in connection with their EIFS litigation experience. In addition, Shipman & Associates, LLP will provide sufficient attorney, paralegal and staff support to assist with the work necessary to adequately represent the existing EIFS clients.

5

*October 26, 2000 Letter Agreement*, at 1. In return, there was to be

> a 50/50 split, between Crumpton & Edge and Shipman & Associates, LLP of any fees to which Crumpton & Edge might be entitled to recover as a result of any fee contract or agreement with a client.

*Id.*

### b.     The February 15, 2001 Settlement Agreement

The February 15, 2001, Settlement Agreement is between Crumpton and Arthur Edge, III and Shipman. Crumpton Edge is not a party to that agreement. Accordingly, that agreement on its face does not effect the obligations of Crumpton Edge.

### c.     Judge Blackburn's October 2, 2003, Order

What constitutes contingency fees accruing to Crumpton Edge was settled in this case by Judge Blackburn's order of October 2, 2003, which dismissed with prejudice all claims based on attorney's fees accruing after the date of Crumpton Edge's dissolution in February 15, 2001. *October 2, 2003 Order*, at 3. Accordingly, from Crumpton Edge, Shipman is entitled only to its portion of Crumpton Edge attorney fees accruing prior to the date of dissolution. As to all other claims for attorney's fees against Crumpton Edge, Summary Judgment will be **GRANTED**, and those claims **DISMISSED, with prejudice**. In addition, Shipman cannot claim an entitlement to fees accrued prior to the October 26, 2000, letter agreement, as that agreement is the basis for their fee claim. Accordingly, Summary Judgment is also appropriate and will be **GRANTED** on all claims against Crumpton Edge for attorney fees accruing prior to the date of that agreement. These claims will be **DISMISSED, with prejudice**.

### 2.     Attorney Fees Accruing from October 26, 2000, through February 15, 2001

The question then becomes, what, if any, fees are owed by Crumpton from October 26, 2000,

6

through February 15, 2001? The Defendant argues that Shipman cannot show an entitlement to attorney fees on EIFS cases in this time period. At oral argument in this matter, counsel for both parties represented that they are not aware of any such fees.[1] Accordingly, there is no genuine issue of material fact that Crumpton Edge owes no remaining sums to Shipman. Accordingly, the Motion for Summary Judgment will be **GRANTED** as to the Plaintiff's remaining claims for breach of contract as against Crumpton Edge. These claims will be **DISMISSED, with prejudice**.[2]

**B.    Liability of Crumpton for Breach of Contract Claims**

   **1.    Contractual Obligations**

Crumpton is clearly a party to the February 15, 2001, Settlement Agreement. The only part of that agreement to which Shipman is a party is Article IV. Nothing in that agreement states that Crumpton owes any division of fees to Shipman.

However, as noted above, in the original letter agreement, the last paragraph of that agreement states:

---

[1] Even without such an admission, the evidence submitted was insufficient to create a genuine issue of material fact as to fees owed. Defendant's evidence on this fact consists of the affidavit of Crumpton which states in pertinent part: "based upon my review of documents produced in this case, I am not aware of any fees owed Shipman & Associates by Crumpton Edge." *Affidavit of Brent Crumpton*, at 1. Such evidence satisfies the Defendant's burden in this case. Mr. Shipman, in his affidavit, in response, while stating that "[s]ubsequent to February 15, 2001," his firm has not been paid for cases that have settled, does not address the critical time period prior to that date. *Shipman Affidavit*, at 11-12. No other affidavits address that period either. The Plaintiff presents no accounting entries or reports, no financial data, no ledger information, and no breakdown of cases and settlement days and fee accruals. Thus, the Plaintiff has provided no evidence to rebut Crumpton Edge's evidence that no fees are owed by Crumpton Edge.

[2] By its order, the Court is not preventing the Plaintiff from showing quantum meruit claims accruing during any time period. The Plaintiff's quantum meruit claim is not limited by this Order to any particular time frame.

> I hope that you will find this arrangement satisfactory. As such, please sign a copy of this letter, *on behalf of you and your firm*, and return the same to me as soon as possible.

*October 26, 2000 Letter Agreement*, at 2. Accordingly, while the first part of that agreement states that it is an agreement between only the two law firms, the signature section indicates that Crumpton is signing on behalf of himself as well as his firm.

The Plaintiff further contends that there is a third, *oral*, agreement between the parties wherein Crumpton agreed to continue to grant Shipman its share of cases that Crumpton took on.

### 2. Analysis

The Plaintiff claims that Defendant Crumpton breached his contract with Shipman.

> In order to demonstrate that a breach of contract has occurred, a party is
>
> "required to present evidence in support of the following elements of his claim: (1) the existence of a valid contract between [the parties]; (2) his own performance under that contract; (3) [the other party's] breach, or failure to perform under the contract; and (4) damage sustained as a result of [the other party's] nonperformance. *Southern Med. Health Sys., Inc. v. Vaughn,* 669 So.2d 98, 99 (Ala.1995)."

*BSI Rentals, Inc. v. Wendt*, 2004 WL 817141, *1 -2 (Ala. Civ. App. 2004) (quoting *Shelton v. Clements*, 834 So.2d 775, 782 (Ala. Civ. App. 2002)). The Defendant contends that there is no written contract requiring payment of anything from Crumpton to Shipman and there is no express contract at all requiring payment of anything from Crumpton to Shipman. It also contends that there is no oral agreement as alleged by the Defendant.

As an initial matter, it is true that Crumpton owes nothing to Shipman under the Settlement Agreement. That document cannot be the basis for liability for breach of contract against Crumpton. However, in the summary judgment setting, the Court must assume, without deciding that the

8

language of the last paragraph of the original letter agreement commits Crumpton *individually*. Therefore, for the purposes of this motion, the Court must assume that Crumpton is liable for the obligations under the letter agreement.

The Plaintiff has presented evidence in the form of Mr. Shipman's affidavit that states: "From and after February 15, 2001, Crumpton acknowledged and agreed to the '50/50' fee split outlined in the October 26, 2000 agreement." *Shipman Affidavit*, at 10. Notably, the February 15, 2001, agreement does not contain a release of Crumpton but does release his partner. Affidavits from personnel working with Shipman contends that Shipman continued to work on the EIFS cases after the February 15, 2001, agreement. *See Slusser Affidavit*, at 8. A jury could reasonably determine that this work would not have continued if there was no fee splitting arrangement. Other persons stated that Crumpton expressly agreed to a continuing obligation to Shipman. *Adams Affidavit*, at 5. In addition, emails cited and referred to by both parties concerning the agreement, when viewed in the light most favorable to the non-moving party, could have been merely an attempt to modify Crumpton's existing obligations under the letter agreement and subsequent oral statements.

The Court holds that this evidence creates factual dispute as to whether or not there was an agreement between Crumpton personally and Mr. Shipman or Shipman and Associates, and as to the terms of that agreement. On that basis, the Motion for Summary Judgment on the Breach of Contract claims against Crumpton will be **DENIED**.[3]

**C.     Quantum Meruit**

At oral argument, the Defendant abandoned its Motion for Summary Judgment as to the

---

[3] The Plaintiff will not limited at trial on his quantum meruit claims for any time period or for his claims against Crumpton personally.

Plaintiff's quantum meruit claims. Accordingly, Plaintiff will be allowed to proceed on its claims for quantum meruit as against all Defendants. The Motion for Summary Judgment as to the claims for quantum meruit will be **DENIED**.

**D.   Liability for Money Advanced**

The Complaint alleges that

> Defendant Crumpton owes the Plaintiff a sum in excess of Fifty Thousand ($50,000.00) Dollars for money advanced or loaned by the Plaintiff, or for money paid by the Plaintiff for the benefit of Defendant Crumpton, or for services performed or supplied by the Plaintiff for Defendant Crumpton, during the year 2001.

*Complaint*, at 8.

Crumpton has, in his affidavit, offered a detailed analysis of money paid and owed, etc. While Shipman's affidavit states merely that over $160,000.00 was loaned and only $96,000.00 was repaid, a trier of fact could find for Shipman based solely on this information. Mr. Shipman testifies to personal knowledge of the amount owed. Accordingly, his affidavit is not unsupported. Judging the evidence in the light most favorable to the non-moving party there is a dispute of fact. The Motion for Summary Judgment as to the Claim for Money Advanced is due to be **DENIED**.

Done this __7__ day of September, 2004.

_____
VIRGINIA EMERSON HOPKINS
UNITED STATES DISTRICT JUDGE